UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FOTINEE FARAH ZAKI, )
)
    Plaintiff, )
)
v. ) Civil Action No.: 04 10705 RWZ
)
UNITED STATES OF AMERICA, )
)
    Defendant. )
)
)

## JOINT PRETRIAL MEMORANDUM

1.    <u>TRIAL COUNSEL</u>

Trial counsel are the attorneys submitting this memorandum.

2.    <u>WHETHER CASE TO BE TRIED WITH OR WITHOUT JURY</u>

Pursuant to 28 U.S.C. § 2402, this action is to be tried by the Court without a jury.

3.    <u>SUMMARY OF PARTIES' RESPECTIVE POSITIONS</u>

**Plaintiff's Position:**

This case arises out of an automobile collision that occurred on September 5, 2001, in Marshfield, Massachusetts, involving Plaintiff's car and a United States Postal Service mail truck. The evidence will show that at approximately 3:45 p.m. on that date Plaintiff, Fotinee Zaki, was driving a 1989 Toyota sedan westbound on Route 139 approaching the intersection of Routes 139 and 3A. Her two-year-old daughter was asleep in a car seat in the back seat of the car, and Ms. Zaki was proceeding at a reasonable and safe speed. The weather was clear and the road was dry. As Ms. Zaki approached the intersection, the mail truck, operated by Edward Keen, was on Route 3A southbound and was stopped at a red light waiting to enter the

intersection to turn left onto Route 139 eastbound. Mr. Keen was in the right hand lane at the stop line with no other vehicles stopped in front of him.

The light was green for Ms. Zaki as she entered the intersection, and she was three quarters of the way through the intersection when the mail truck suddenly pulled out and crashed into her car. The left front of the truck struck the right front of the car causing extensive damage to both vehicles. Ms. Zaki's car, valued at $2,350.00, was rendered a total loss, and the mail truck sustained over $5,000.00 damage in the crash. Although she was wearing a seatbelt, the force of the impact hurled Ms. Zaki's body forward in her seat, causing a fracture of the distal shaft of the middle finger of her left hand and a contusion of her right shoulder. Mr. Keen was also hurt in the crash. The evidence will establish that Mr. Keen was negligent in his operation of the mail truck and caused the collision because he entered the intersection when it was not safe to do so and when Ms. Zaki's car was already three quarters of the way into the intersection. By his own admission, Mr. Keen did not see Ms. Zaki's car until he pulled out directly into her path a moment before impact. Therefore, he either failed to look to his left to see that no cars were coming before entering the intersection, or looked, but failed to see her, even though her car was just about to pass in front of him and was in plain view.

As to damages, the evidence will show that Ms. Zaki was transported by ambulance to South Shore Hospital in Weymouth where x-rays revealed that she had sustained a fracture of the distal shaft of the middle finger of her left hand and a contusion of her right shoulder. Although the fractured bone eventually healed satisfactorily, her left hand developed a reflex sympathetic dystrophy which has left the hand essentially non-functional and painful. As a result of the injury and disability, Ms. Zaki is presently unable to do any work or activity that requires the use of two hands. In his narrative report dated July 27, 2004, Ms. Zaki's treating

physician, orthopedic surgeon, Mark J. Bulman, M.D., concluded that Ms. Zaki suffered a permanent partial disability as a result of the injury representing a 45% impairment of her left upper extremity in accordance with the AMA Guides to Permanent Impairment. He stated that the motor vehicle collision on September 5, 2001, was the cause of her injury and resultant disability. Now, more than three years since the date of the collision, her hand remains painful and extremely sensitive to touch, which has prevented or significantly curtailed her ability to obtain suitable employment, perform normal chores and activities, care for and play with her five year old daughter, and has otherwise affected her ability to enjoy a normal life.

Special damages include over $15,000.00 in reasonable and necessary medical expenses, much of which Ms. Zaki had to pay out of pocket for treatment after her automobile insurance company, Commerce Insurance Company, paid out the full $8,000.00 in PIP benefits. This figure does not include the cost of treatment she received in Mississauga, Ontario, Canada, after she moved there in May, 2002. She also suffered property damage for the total loss of her vehicle in the approximate amount of $2,350.00, based on the N.A.D.A. reference book of automobile valuations.

**Defendant's Position:**

**Liability**

On September 5, 2001 at approximately 3:40 p.m., Keen was driving a Grumman Long-Life Vehicle ("LLV") south on Main Street. Zaki was operating a 1989 Toyota westbound on Ocean Street. Plaintiff's two-year old daughter was a back seat passenger. Main Street and Ocean Avenue intersect at a T-shaped intersection and the intersection is controlled by a traffic light in all directions. On the day of the accident, the weather was clear and the roads were dry.

At the intersection of Ocean and Main Streets, Keen had a green light and he proceeded through the intersection, intending to turn left onto Ocean Street. As Keen was traveling through the intersection, Plaintiff, traveling westbound on Ocean Street, ran a red light and struck the side of the Postal vehicle.

A patrolman from the Marshfield Police Department investigated the accident and prepared a Commonwealth of Massachusetts Police Report of Motor Vehicle Accident. In the narrative, he wrote, "Vehicle #1 [Plaintiff] was traveling west on Ocean St. when it drove through a red light colliding with Vehicle #2 [USPS vehicle]." The patrolman issued a citation to Plaintiff for failing to stop at the red light. Rachel Vasmus is identified as a witness in the Police Report, and she apparently confirmed that Plaintiff ran the red light and struck the Postal vehicle.

### Alleged Damages

Plaintiff was transported from the accident scene via ambulance to South Shore Hospital. The Region V Standard Ambulance Report Form notes that Plaintiff complained of pain in the right shoulder and left hand. Plaintiff denied hitting her head, loss of consciousness or any head, neck or back pain. The Report Form notes that there is no visible injury to Plaintiff's two-year old daughter.

Plaintiff was treated in the Emergency Department of South Shore Hospital by orthopedist, Dr. Mark Bulman. The patient history notes that Plaintiff was in a motor vehicle accident with a mail truck. The report states, "Apparently this occurred at an intersection, whereupon the mail truck must have run a red light." The records state that Plaintiff had point

tenderness, swelling and discoloration of the left hand at the level of the middle finger metacarpophalangeal joint, particularly over the distal metacarpal level. Plaintiff also had some tenderness over the anterior aspect of the right shoulder, but it is noted that "there does not seem to be a major limitation of range of motion due to pain."

X-rays taken at the emergency room showed an oblique fracture of the distal shaft of the third metacarpal with mild displacement and over-riding of the fracture fragments. They also showed an additional linear nondisplaced component running proximally. X-rays of the right shoulder were normal, showing no fracture, dislocation or bone destruction.

Plaintiff's diagnoses upon discharge from the emergency room were fractured left hand, middle finger distal metacarpal shaft and right shoulder contusion/strain. It is unclear from the medical records, but it appears from the medical bills that Plaintiff's finger was splinted. Plaintiff was advised to follow up with Dr. Bulman.

Plaintiff returned to see Dr. Bulman on September 25, 2001. Dr. Bulman noted that Plaintiff continued to use her left hand after the accident during the course of caring for her child. He also noted:

> X-rays done today do show that the fracture does seem to have slipped in a sense of shortening and clearly it appears to be shorter than it did when I saw her previously enough so that my suggestion to her is to make an attempt to close reduce and percutaneously pin this fracture.

In the September 25, 2001 office note, Dr. Bulman stated that there was a possibility that the fracture could not be reduced since Plaintiff was "twenty days out from her surgery." There

is nothing in the medical records to indicate that Plaintiff previously had surgery, and it may be that "surgery" is a typographical error and what was meant was that Plaintiff was twenty days out from the accident.

Plaintiff had a closed reduction of the middle metacarpal fracture of her left hand and percutaneous pinning at South Shore Hospital on September 26, 2001. This was done on an outpatient basis; however, Plaintiff did have general anesthesia.

Plaintiff returned to see Dr. Bulman on October 15, 2001. He noted that Plaintiff was experiencing a fair amount of discomfort. He went on to write, "I think she has a very low threshold of pain as even removing the splint which is fairly benign thing to do caused a marked apprehension for her. She seems to have an inordinate response as far as pain is concerned raising the possibility of reflex sympathetic dystrophy potential here." Dr. Bulman also described Plaintiff as tending to be hypersensitive. He prescribed Plaintiff percocet and "[s]he was advised to take a couple of Percocets before coming to the office next time."

Plaintiff's hand was X-rayed at the October 15, 2001 visit to Dr. Bulman. The X-rays showed that the alignment of the fracture was satisfactory; however, there was no obvious new bone formation. Dr. Bulman advised Plaintiff to wear the AP splint for the next two weeks, and at that point he would consider pin removal.

Plaintiff saw Dr. Bulman again on October 29, 2001 at which time the pins were removed from Plaintiff's hand. X-rays showed that the fractures were satisfactorily aligned and

healing well. Dr. Bulman did note that there was some shortening of the metacarpal but no angulation. He gave Plaintiff a script for occupational therapy. He went on to state that given Plaintiff's low pain threshold, she may need occupational therapy for an extended period of time to "maximize her end result."

Plaintiff returned to Dr. Bulman for a follow up visit on November 6, 2001. She reported that she was experiencing discomfort with physical therapy. Dr. Bulman noted that Plaintiff was having a difficult time with her range of motion with limited flexion and extension. Additionally, Plaintiff's left hand was swollen and there was a darker hue (purplish) to the left hand. Dr. Bulman stated that the symptoms were indicative of RSD. X-rays taken on that day showed that the fracture was well-healed.

The X-rays also included Plantiff's wrist – apparently Plaintiff had complaints related to her left thumb and wrist. He noted that the first dorsal compartment seemed tender and was aggravated by Finkelstein's Test, indicating a potential for Dequervain's Syndrome. Dequervain's Syndrome is essentially swelling of the tendons to the thumb, and pain can radiate into the wrist and forearm. Dr. Bulman prescribed additional anti-inflammatory medicines as well as continued physical therapy.

Plaintiff saw Dr. Bulman again on December 3, 2001. He reported that Plaintiff had "an inordinate amount of discomfort in the left hand." Plaintiff had limited range of motion in her hand and wrist. The skin on Plaintiff's hand was shiny and there was a slight difference of coloration between the left and right hand, with the left hand being darker. Dr. Bulman stated

again that Plaintiff's symptoms all pointed to RSD. He referred her to a pain clinic for management of the RSD.

Plaintiff saw James S. Wechsler, M.D. at the Pain Management Center at South Shore Hospital on December 21, 2001. Plaintiff rated her pain as a seven on a scale of one to ten and her stress as a four. On physical examination, the temperature of both hands was 88 degrees and Dr. Wechsler noted more hair growth on the left hand, which appeared atrophic. The skin on the left hand was thin and skin creases were less. Dr. Wechsler noted that there was edema in the hand and that Plaintiff was unable to make a fist. He diagnosed her with "probable" RSD in the left hand and administered a left stellate ganglion block. Plaintiff was also started on Neurontin.

Plaintiff returned to Dr. Bulman on January 3, 2002. She reported some mild improvement but stated that her progress was slow and that she still had a lot of discomfort. She also reported that the stellate ganglion block provided little or no relief. Dr. Bulman stated that her skin remained shiny and a darker hue than her opposite hand. He prescribed further physical therapy and recommended that she return to the pain clinic.

On May 14, 2002, Plaintiff began treating with Dr. Michael J. Weinberg, a plastic surgeon with Mississauga Cosmetic Surgery Clinic in Mississauga, Ontario. Plaintiff treated with Dr. Weinberg until March 5, 2003. In a letter to Plaintiff's counsel, he stated that there were no specific charges for her treatment since all the services were insured services as provided for by the Ontario Health Insurance Plan.

At Plaintiff's May 14, 2002 appointment with Dr. Weinberg, she complained that she

was unable to bend her hand. Dr. Weinberg's physical exam revealed that the MCP joints of her long, ring and little fingers lacked 10, 10 and 5 degrees of extension. He recommended extensive therapy.

Plaintiff attended physiotherapy and occupational therapy three times per week from May 15, 2002 through November 12, 2002. She received therapy for pain, decreased ROM, decreased strength and function. In a report dated March 31, 2003 from the physical therapist, the therapist noted that Plaintiff complained of pain at the left D3 MCP joint only occasionally at night. On palpitation she was tender over the left D3 MCP joint as well as the intermetacarpal ligament between D2/D3 and D3/D4. It was noted that Plaintiff stayed home to care for her three-year old child. Plaintiff was employed on a part-time basis at Tim Horton's during 2002 but "was unable to safely carry out her duties due to her hand injury." Plaintiff continued to have "moderate difficulties" carrying heavy objects, shoveling snow, cooking and cutting vegetables. The therapist noted that improvements were made in Plaintiff's ROM, strength and function during her treatment. She was discharged with a home program in November 2002 because her progress had plateaued.

On July 14, 2003, Dr. Weinberg issued a final report diagnosing Plaintiff with RSD and noting an undiagnosed mass on the dorsum of the left ring finger. He stated that Plaintiff has a very weak hand with significant limitations for range of motion. He noted that Plaintiff was having "very significant difficulties at work" and that she was unable to hold a part-time job at "Tim Horton's." He attributes her work issues to the problems with her left hand. Dr. Weinberg also noted that the pain wakes Plaintiff up at night and interferes with her ability to care for her

child. He stated that the problems with her left hand have caused her relationship with her husband to deteriorate. Also, she is unable to return to her pre-accident job, which was teaching gymnastics. Dr. Weinberg stated, "Essentially, this woman had injury in a car accident which was resulted in a reflex-sympathetic-dystrophy leading to a stiff weak essentially non-functional i.e. helper hand. She is unable to return to her pre-accident role, both professionally and personally. Her injury is permanent; there is no available therapy."

The amount of medical bills submitted by Plaintiff's counsel in support of her administrative claim totaled $15,260.86. As noted above, this figure does not include any bills for treatment received in Ontario, Canada since the treatment was provided pursuant to the Ontario Health Insurance Plan.

### Administative History

Plaintiff, through her attorney, submitted an SF 95 and supporting documentation on August 18, 2003. In her SF 95, Plaintiff stated a sum certain of $1,002,350.00 - claiming property damage in the amount of $2,350.00 and personal injury damages of $1,000,000.00. Kimberly Herbst, Paralegal Specialist in the National Tort Center, denied the claim by certified letter dated October 17, 2003 on the basis that an investigation of the matter failed to establish a negligent act or omission on the part of the U.S. Postal Service or its employees. Plaintiff timely filed suit in the United States District Court for the District of Massachusetts on or about April 7, 2004.

4. **ESTABLISHED FACTS**

None at this time, though, if the case cannot be settled, counsel will meet before trial to attempt to reach agreements and stipulations where appropriate.

5. <u>CONTESTED ISSUES OF FACT</u>

All issues of fact are contested at this time.

6. <u>JURISDICTIONAL QUESTIONS</u>

None identified at this time.

7. <u>ISSUES OF LAW</u>

None identified at this time.

8. <u>REQUESTED AMENDMENTS TO PLEADINGS</u>

None at this time.

9. <u>ADDITIONAL MATTERS</u>

Plaintiff has submitted a written settlement proposal pursuant to L.R. 16.1(C) in the amount of $150,000.00 and expressed her willingness to submit the case to mediation. Counsel for the United States has agreed to recommend mediation to her client.

10. <u>PROBABLE LENGTH OF TRIAL</u>

The parties reasonably estimate the length of a bench trial for this case to be about two days.

11. <u>LIST OF WITNESSES</u>

**Plaintiff:**

a. Fotinee Zaki, 1265 Killaby Drive, Mississauga, Ontario, Canada L5V2C2; (905) 8144-8550. Ms. Zaki, the Plaintiff, is expected to testify as to the circumstances of the collision and the injuries and damages she suffered as a result of the collision.

b. Magdy Rafla, 1265 Killaby Drive, Mississauga, Ontario, Canada L5V2C2; (905) 8144-8550. Mr. Rafla, Ms. Zaki's husband, is expected to testify as to his knowledge of the scene of the collision, the results of the hearings on the citation and insurance surcharge notice issued to his wife as a result of the collision, and his wife's hand injury and how the injury has affected her.

c. Edward W. Keen, 78 Parker Street, Marshfield, MA 02050. Mr. Keen, the operator of the mail truck, is expected to testify as to the circumstances of the collision and events immediately following the collision.

d.  Mark J. Bulman, M.D., 780 Main Street, South Weymouth, MA 02190; (781) 331-0800. Dr. Bulman, an orthopedic surgeon and Ms. Zaki's treating physician, would likely testify by way of audiovisual deposition. Dr. Bulman would be expected to testify as to his education, training, and experience, and to his examinations and treatment of Plaintiff in accordance with his office notes, narrative report dated July 27, 2004, and his review of Ms. Zaki's medical records. Dr. Bulman would be further expected to testify as to the nature, cause, extent, diagnosis, care, treatment, findings, prognosis, and permanency of the injuries and disabilities suffered by Ms. Zaki as a result of the motor vehicle collision on September 5, 2001. He would also be expected to testify as to any future medical care and treatment, and the anticipated costs of such care and treatment.

e.  Keepers of Records of Plaintiff's health care providers for authentication of medical records and bills, if necessary.

Plaintiff reserves the right to amend this list as circumstances may require and to call any witness listed by Defendant.

**Defendant:**

   **Fact Witnesses:**

a.  Fotinee Farah Zaki, Plaintiff, 1265 Killaby Drive, Mississauga, Ontario, Canada L5V2C2; (905) 8144-8550.

b.  Edward W. Keen, Letter Carrier, United States Postal Service, Marshfield Main Office, 111 Snow Road, Marshfield, MA 02050. Mr. Keen was the driver of the Postal vehicle involved in the accident that is the subject of this complaint, and will testify as to the circumstances of the collision, including, but not limited to, the fact that his traffic light was green when he proceeded through the intersection.

c.  Rachel Vosmus, 29 John Street, Marshfield, MA 02050. Ms. Vasmus was an eyewitness to the accident that is the subject of this complaint, and will testify that she was in the motor vehicle immediately behind Mr. Keen's vehicle. Ms. Vosmus will testify as to the circumstances of the collision, including, but not limited to, the fact that she had clear visibility of her traffic light and observed it to be green when Mr. Keen proceeded through the intersection, just prior to the collision. Ms. Vosmus, a lifelong resident of Marshfield, Massachusetts, who has traveled that particular intersection on countless occasions, will further testify that Plaintiff's traffic light was red when she proceeded into the intersection, colliding with Mr. Keen's vehicle.

d.  Robert Kinan, Postmaster, United States Postal Service, Marshfield Main Office 111 Snow Road, Marshfield, MA 02050. Mr. Kinan will testify that he

investigated the accident and prepared relevant accident reports concerning same.

e. Marshfield Police Department, 1639 Ocean Street, Marshfield, MA 02169; (781) 834-6655. A patrolman from the Marshfield Police Department will testify that he investigated the accident that is the subject of this complaint and prepared a police report in which he cited Plaintiff for "disregard[ing] traffic light" and for "other moving violations." His name is not legible on the police report, but witnesses have identified him as Officer DeMayo.

f. Marshfield Fire Department, 60 S. River Street, Marshfield, MA 02050, (781) 837-1315; Marshfield Fire Department provided ambulance services to Plaintiff after the accident.

g. Mark J. Bulman, M.D., 780 Main Street, South Weymouth, MA 02190, (781) 331-0800; Dr. Bulman is expected to testify concerning the medical treatment he provided Plaintiff.

**Expert Witnesses:**

a. Gordon F. Lupien, M.D., Deaconess Associates, One Brookline Place, Suite 303 Brookline, MA 02445; Dr. Lupien is expected to testify concerning observations and conclusions he made during Plaintiff's Independent Medical Examination on December 27, 2004. Dr. Lupien will further testify as to his review of Plaintiff's medical records and reports, and the reasons for his conclusion that "it is not reasonable or correct to assign any permanent impairment or loss of function which could be the result of [Plaintiff's] injury" on September 5, 2001.

b. Emmanuel B. Green, Ph.D., 1674 Beacon Street, Brookline, MA 02446 (Vocational Psychologist - if necessary). Dr. Green is expected to testify as to his findings from Plaintiff's vocational assessment if necessary.

12. **LIST OF EXHIBITS**

**Plaintiff:**

a. Plaintiff's medical records, reports, and bills certified pursuant to G.L. c. 233, § 79G.

b. Photographs depicting the scene of the collision taken on the day of the collision and on other dates thereafter, and photographs depicting damage to the vehicles involved.

c. Appropriate edition of N.A.D.A. reference book of automobile valuations.

**Defendant:**

a. Commonwealth of Massachusetts Police Report of Motor Vehicle Accident, dated September 5, 2001.

b. Citation number K1384001 concerning Plaintiff's "red light violation," as referenced in Commonwealth of Massachusetts Police Report of Motor Vehicle Accident, dated September 5, 2001.

c. Officer's Accident Report, dated September 5, 2001.

d. Independent Medical Examination report of Gordon F. Lupien, M.D., dated January 27, 2005.

e. Narrative report of Mark J. Bulman, M.D., P.C., dated July 27, 2004.

f. Deposition transcript of Fotinee Zaki, dated December 28, 2004.

g. Deposition transcript of Edward Keen, dated October 7, 2004.

i. Deposition transcript of Rachel Vasmus, dated February 1, 2005.

j. Deposition transcript of Mark J. Bulman, M.D., P.C., dated January 31, 2005.

k. Plaintiff's Standard Form 95 and attachments (A through F), dated August 11, 2003.

l. Defendant's PS Form 1769, dated September 6, 2001.

m. Defendant's PS Form 1700, dated September 7, 2001.

n. Defendant's Standard Form 91, dated September 7, 2001.

o. Correspondence from the Law Department of the Postal National Torts Center dated October 17, 2003, to Plaintiff's counsel.

p. Correspondence from the Law Department of the Postal National Torts Center dated September 25, 2003, to Plaintiff's counsel.

q. Correspondence from the U.S. Postal Service Tort Claims Office dated September 14, 2001, addressed to the Commerce Insurance Company Claims Department.

r. Correspondence from the U.S. Postal Service Tort Claims Office dated October 29, 2001, addressed to the Commerce Insurance Company Claims Department.

s. Correspondence ("Second and Final Notice") from the U.S. Postal Service Tort Claims Office dated December 7, 2001, addressed to the Commerce Insurance Company Claims Department.

t.  Office notes and treatment records of Dr. Nabegh Abdelshaheed.

u.  Plaintiff's Canadian Revenue Agency Income Tax Return Information for the year 2002.

v.  Plaintiff's 2003 Tax Return Summary.

w.  Commonwealth of Massachusetts Operator's Report of Motor Vehicle Accident prepared by Edward Keen on September 7, 2001.

x.  Photographs of the accident scene taken by Defendant on September 5, 2001.

| | |
|---|---|
| FOTINEE ZAKI<br>By her Attorney, | UNITED STATES OF AMERICA<br>by its Attorney, |
| _____<br>Daniel E. Doherty, BBO#127010<br>141 Tremont Street<br>Boston, MA 02111 | /s/ Gina Walcott-Torres<br>Gina Y. Walcott-Torres<br>Assistant U.S. Attorney<br>Moakley U.S. Courthouse<br>1 Courthouse Way, Suite 9200<br>Boston, MA 02210 |